UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 01 2019 ★
LONG ISLAND OFFICE

Clifford Gavin

Plaintiff,

[Insert full name of plaintiff/prisoner]

**CIVIL RIGHTS COMPLAINT**
42 U.S.C. § 1983

CV-19 1250

JURY DEMAND

YES ✓ NO ____

-against-

Suffolk County Sheriff's Office
Correction Division
Errol D. Toulon, Jr., Ed.D, Sheriff
Steven Krayewski, C.O. #1174
Joseph Sammartino, Cpt. #30

Defendant(s).

BIANCO, J.

TOMLINSON, M.J.

RECEIVED
MAR 01 2019
EDNY PRO SE OFFICE

[Insert full name(s) of defendant(s). If you need additional space, please write "see attached" and insert a separate page with the full names of the additional defendants. The names listed above must be identical to those listed in Part I]

I. **Parties**: (In item A below, place your name in the first blank and provide your present address and telephone number. Do the same for additional plaintiffs, if any.)

A. **Name of plaintiff** Clifford Gavin

If you are incarcerated, provide the name of the facility and address:

Suffolk County Jail
110 Center Drive
Riverhead, New York 11901

Prisoner ID Number: 746722

If you are not incarcerated, provide your current address:

______________________________________________

______________________________________________

______________________________________________

Telephone Number: ______________________________

**B. List all defendants.** You must provide the full names of each defendant and the addresses at which each defendant may be served. The defendants listed here must match the defendants named in the caption on page 1.

Defendant No. 1

Errol D. Toulon, Jr., Ed.D.
Full Name

Sheriff of Suffolk County
Job Title

100 Center Drive
Riverhead, New York 11901
Address

Defendant No. 2

Steven Krayewski
Full Name

Correction Officer Badge # 1174
Job Title

15 Glover Drive
Yaphank, New York 11980
Address

Defendant No. 3

Joseph Sammartino
Full Name

Captain # 30
Job Title

15 Glover Drive

Yaphank, New York 11980
Address

Defendant No. 4

Full Name

Job Title

Address

Defendant No. 5

Full Name

Job Title

Address

**II. Statement of Claim:**

(State briefly and concisely, the facts of your case. Include the date(s) of the event(s) alleged as well as the location where the events occurred. Include the names of each defendant and state how each person named was involved in the event you are claiming violated your rights. You need not give any legal arguments or cite to cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. You may use additional 8 ½ by 11 sheets of paper as necessary.)

Where did the events giving rise to your claim(s) occur? Yaphank Correction facility, 15 Glover Drive, Yaphank, New York 11980 outside of D-Pod cell #44

When did the events happen? (include approximate time and date) At approximately 7:52 A.M. on December 23rd, 2018

Unnecessary, Excessive use of force;

Facts: (what happened?) I was awaken from sleep by C.O. Steven Krayewski #1174 and told to exit my cell for a routine cell search. I complied. He performed a pat, frisk procedure without incident, entered my cell and searched. Upon completion he told me to go back in my cell but I could not understand the second part of his instruction so I asked him to repeat it. The C.O. repeated the instruction to lay face down on my bunk. In compliance I layed on my stomach but was unsure which way my head was to face, lay flat on my cheek as on a pillow, or if my head was to be in a position with my face smoothered into the mattress nose down, either position being face down. I needed to be sure I was following his instruction correctly since he remained standing in the doorway. I layed my face with my cheek to the mattress and asked the C.O., "you mean like this?", in which he became irate, hostile, and snapped saying, "alright, that's it, come out of your cell."

★ Continued on 12 separate sheets of 8½ x 11 paper...

**II.A. Injuries.** If you are claiming injuries as a result of the events you are complaining about, describe your injuries and state what medical treatment you required. Was medical treatment received?

I had coin-sized bruising to my right temple and cheek. I was not treated for the bruising. I had a right shoulder injury that I was treated for with a pain-reliever. I have experienced depression, nightmares, sleeplessness and anxiety. I have been treated with Remron and Melatonin. I have not been treated for phobia,

(A) Statement of Facts Continued;

The Inmate Handbook says nothing about the exit procedure after a search, I have never been in the Yaphank Facility before, nor experienced a cell search since arriving 11/17/18. Half asleep, shocked, and confused I got up exiting my cell I asked, "what did I do? I am trying to understand you.", and this C.O. told me to turn around and face the wall. I complied. I spread my legs, hands on the wall, then placed my hands behind my back when asked and was handcuffed. Once cuffed I was kicked from behind by this C.O., fell backwards towards the ground so hard my slippers flew off of my feet, and I urinated on myself in fear. I was lifted up to my feet by this C.O. and slammed face first into the wall, all unprovoked. I was roughly taken out of the Pod barefoot, my hands being violently twisted in the cuffs behind my back, my body bent over from the excruciating pain, and I could hear this C.O. giggling at the urine trickling down my pants. Once outside of the Pod I was continuously manhandled without my resistance, hands and wrists violently twisted, body bent over from the pain all the way to a holding cell in Bookings. A Sergeant, a member of the Sheriff's Emergency Response Team who helped escort me and admitted did not know what happened, asked the nurses to come check me out. I was obviously hurt, force had been used, and

page ②

(A) Statement of facts Continued;

and I complained to the nurses of my injuries. The nurses said they would return but did not. I remained in The Bookings holding cell from approximately 8 A.M. until well after 1 p.m. and denied a lunch meal. I did not receive a meal until 4:30 p.m. dinner re-housed in the North 2 dormitory. I was issued a Disciplinary Report for the charges of failure to obey a direct order, failure to follow pat, frisk instructions, and disrespect. I have never been issued a Disciplinary Report / Infraction or any other such rule violation ever in any City / County Jail or State Correctional Institution I have been unfortunately incarcerated in.

(B) Correction Officer Misconduct;

1. In the North 2 open dormitory on 12/23/18 I wrote a (3) page factual statement to the Chief Administrative Officer to initially report the unnecessary, excessive force / assault incident and can be viewed placing it into the inmate mailbox between 10 p.m. and 11:30 p.m. It was never received by any such Officer in that position.

2. In the North 2 open dormitory on 12/24/18 I wrote a (3) page grievance addressed to the Grievance Coordinator and can be viewed placing it in the inmate mailbox to report this incident on 12/25/18 between 6 am.-

(B) Statement of facts Continued;

and 7:30 A.m. This handwritten grievance was never received or investigated by any Grievance Coordinator.

3. On 12/26/18 I was re-housed again, to the North 3 open dormitory. I went before a Hearing Panel for the Disciplinary Report on 1/10/19 (although the actual disposition date says 1/11/19), and I first learned of C.O. Steven Krayewski's sworn written statement of the 12/23/18 incident. This C.O. stated when he told me to re-enter my cell and lay face down on the bunk I refused by standing in my cell and asking him why did he search my cell. However, the cell door was wide open and my legs and feet should be viewed through one of the many video cameras laying horizontal on the bunk. This C.O. improperly reported this incident.

4. This C.O. Steven Krayewski also stated in his sworn, written statement once I exited the D-Pod cell #44 the second time I just threw myself down towards the ground. This is an improper and intentional false statement based on the actual video footage of this incident showing him kicking my legs from beneath me causing me to fall backwards. He omitted the facts of force used

5. During the Disciplinary Hearing I asked the Hearing Panel, Sergeant J. Hickey #189 and C.O. G. Reilly #1336 acting on behalf of the Warden/Sheriff, to

(B) Statement of facts Continued;

please view the video of the incident to prove the misconduct and improper reporting of C.O. Krayewski and was told by Sgt. J. Hickey #189 there is "some rule prohibiting" the Panel from viewing video of an altercation, even though my version of what happened was radically different.

6. I was subsequently found guilty of failure to obey a direct order, the other 2 charges dismissed, and I appealed the guilty finding of the disposition and sanctions. On appeal I stated several reasons why the video of the incident needs to be viewed, including all of the above reasons and was denied by Captain Joseph Sammartino #30, not based on any "rule prohibiting" viewing of the video or anything pertaining to the video, but based on C.O. Krayewski's written version of the incident which are false. This Appeal disposition decision was made on 1/15/19.

7. Sometime around 1/19/19 I signed a list for the month of January in the North 3 dormitory to receive a haircut. This Barbershop list of names was called the week of January 21st, 2019. I was not called in spite of atleast 3 chit request slips informing of an upcoming 1/29/19 court date and need for a haircut.

8. For 3 weeks up until 1/24/19 via kiosk sick call I requested to see Mental Health, I complained

(B) Statement of facts Continued;

of experiencing anxiety, nervousness, depression, and stress related issues associated with the 12/23/18 incident. Every other day for 2 weeks, and every day for one week I made these requests and not seen. On 1/23/19 I placed a completed grievance form into the North 3 mailbox, I was seen by Mental Health on 1/24/19, and on 1/30/19 the Grievance Coordinator Badge # 1210 accepted my claim as valid after an investigation and was responsible for my 1/24/19 visit. This Grievance Coordinator also stated never receiving any hand written grievance 3 pages from 12/24/18 of the incident leading to this civil complaint. After another visit to see Mental Health on 1/26/19 I was placed on Remron medication, an anti-depressant, as well as melatonin to help me sleep without nightmares and given a therapist to see on a scheduled basis.

9. On 1/21/19 I requested by chit request slip the Law Library service of Notary, as well as 2 more times up until 1/29/19. These requests were never seen and went unanswered.

10. On 1/29/19 the North 3 dormitory was called to the Law Library, however, no Notary was present. A list was made to see the Notary on a later occasion with myself and another inmate. On 1/30/19 between 9 A.M. and 10 A.M. the other inmate was called to

Statement of facts Continued;

see the Notary and not me.

11. On 1/30/19 I placed a handwritten grievance into the North 3 mailbox and it was either not received or otherwise not answered.

12. On 1/31/19 another handwritten grievance was placed into the North 3 mailbox stating the same grievance concerning the Notary as in the 1/30/19 grievance. I also wrote a chit request slip for the Notary and at 10:30 p.m. before dropping the request slip and grievance into the mailbox I held them both up to the camera behind the Officer's desk. As soon as the Officer came from behind the desk to announce count time I stood in front of the desk with both hands raised with the grievance and request slip and can be seen placing both into the mailbox. Both have either not been received or answered.

On 2/1/19 after the conclusion of a chapel religious service and returning to North 3 I was immediately called back to the chapel to see the Notary Joseph McGarty, the same C.O. who checked my name off at the previous religious service. I asked if he received any of my requests via chit slips, or if the Grievance Coordinator visited him to investigate and he replied, "No" and was unaware of any request or grievance. He only called me back to the chapel remembering my name from the 1/29/19 list of

(B) Statement of facts Continued;

inmates who needed Notary and to tell me a 1983 Civil complaint does not need to be notorized. He then notorized all of my paperwork that needed a Notary and made copies. None of my grievances, except on 1/23/19 concerning mental health and deemed valid, have been received or answered.

(C) Maintaining an atmosphere of intimidation That circumvents the furtherance of justice and due process of law;

1. An inmate is to address each staff member by title, ex. (Sgt., C.O., or Mr., Sir, Ms., Miss, Maám). I have been unsuccessful in obtaining the names of other Officers, or full names, involved in the incidents leading to and surrounding this Civil Complaint. Each Officer I ask says they can not tell me another officer's name, or even their own name. No Officer would give me the Warden's name and it is absent from the handbook.

2. No County employee or Correction Officer wears any name tag at the Yaphank facility making it almost always impossible to accurately report and name persons who violate an inmates' rights or who otherwise causes harm. The only reason I know some Officer's names or partial names and

(C) Statement of facts Continued;

Badge numbers associated with my complaint, but not all, is because their name appears somewhere in a Disciplinary Report, Hearing disposition, Appeal, or Grievance investigation.

3. There are no posters, placards, or other written material affixed to the wall in any housing Unit, Bookings, medical unit, or other common area where inmates gather providing a free phone number to call if an inmate feels they may have become the victim of a crime or other wrongful act of physical abuse.

4. Only upon diligent research did I find a phone number in the Inmate Handbook on page 11 to Internal Affairs on the bottom of the page in small print to possibly report the excessive force/assault incident.

5. The phone number to Internal Affairs did not say it would ask inmates to leave a message, it did not say it would be a free phone call for inmates.

6. I took a chance in trying to call the Internal Affairs phone number on 12/28/18 using a debit account option instead of collect, although I did not have any money in my account at the time to pay for the call, the call went through and I found out inmates could report crimes against them while incarcerated this way.

7. In no common place is it made visible inmates' right to place a free phone call to an independant, outside entity, free from fear of retaliation, if they believe

(C) Statement of facts Continued;

they have become the victim of a crime or other wrongful act while incarcerated at the Yaphank facility.

8. The Inmate Handbook does not say I can report an incident of abuse involving another inmate, other than myself, besides sexual abuse.

9. In order to make a report of abuse of any sort I would have to have the names of every person involved in an incident.

10. On 1/16/19 in the North 3 dormitory between 10:30 p.m. and 11:30 p.m. at the Yaphank facility Correction Officers, approximately 3, entered the dormitory in a non-emergency situation and found an inmate, last name Rodriguez, in a bunk not assigned to him. An Officer, a member of the Sheriff's Emergency Response Team, asked him to place his hands behind his back and the inmate complied with no resistance. After inmate Rodriguez was handcuffed he began to scream and yell in excruciating pain, body bent over forward, as his hands and wrists were violently twisted in the cuffs and he was escorted to the "trap" salley Port area. This incident can be viewed by the many video surveillance cameras throghout the dormitory.

11. The Sheriff's Office, Correction Division, commonly uses force tantamount to torture tactics to inflict pain as a punishment on inmates even for minor rule

(C) Statement of facts Continued;

violations and to intimidate the inmate population who views these unprovoked acts of unnecessary and excessive uses of force and abuse.

12. It is impossible for me to obtain the names of the officers involved in the above mentioned incident, and I am not allowed to report this incident of abuse I witnessed involving another inmate.

(D) Mental Anguish and Emotional Distress;

1. On 12/23/18, the evening of the excessive force/abuse incident involving myself, I placed a distress phone call to my Mother in South Carolina in hopes she could report this incident to some outside entity, or to the Institution Officials directly. She informed me that an inmate with my contact information called her earlier that morning to inform her that Correction Officers were abusing her son. Inmate Roosevelt Rose #746723 told her that although he did not see what happened, all of the other inmates who witnessed what happened said that I did nothing wrong and the officers were beating me up and dragged me out of the D-Pod housing Unit. He informed her to call the facility to check on my well-being.

page (11)

(D) Statement of facts Continued;

2. My Mother made several attempts to google information to call a phone number to report the incident and she was unsuccessful in speaking to anyone.

3. Over the course of five days I grew increasingly worried, terrified, and frustrated not being able to report my abuse. My 3 page complaints to both the Chief Administrative Officer and to the Grievance Coordinator mysteriously vanished and never made it to the Officials they were addressed to. I began to feel more and more helpless, despondent, afraid, and discouraged.

4. I saw no toll free emergency phone numbers to call, every officer I asked said they did not know of any such number to call, and my mother and I both frantically searched for a way to report this incident to no avail.

5. Whenever my Mother did find a phone number to the Sheriff's Office and called she only received a message to leave voicemail, all of which she did not receive any call back.

6. Finally, on 12/28/18 I found the phone number to Internal Affairs Unit, attempted to call myself using the debit option although my account balance was zero, and was successful in leaving a voice message to report the incident of my abuse. Internal

(D) Statement of facts Continued;

Affairs Representatives did not come conduct an interview with me, gather a statement, or took photo's of me until 1/2/19, the total of 10 days from the actual incident to the report, The bruising to my face and head already gone. I was told an investigation would be conducted and I have not heard any response or result.

7. On 1/11/19 I called and left Internal Affairs a message to provide the evidence I learned of C.O. Krayewski's improper reporting and intentional fabrication of the facts in his written statement in hopes they would view the video footage to see the truth. I did not receive any response back.

8. Out of fear for my safety and well-being I waited until transported temporarily to the Nassau County Jail on unrelated charges to write a letter Feb. 10th to Internal Affairs detailing all of the allegations I made in Part (B), Correction Officer Misconduct, of this civil complaint in hopes they will investigate my claims of retaliation. I did not receive a response.

9. For all of the reasons stated in Part (B) of this civil complaint I am fearful for my life and am being retaliated against for reporting my incident of unnecessary, excessive force/abuse.

10. I am in need of on-going Mental Health treatment as a result of this abuse incident and subsequent misconduct.

or paranoia, which also resulted from the incident of abuse. I have not met regularly with a therapist as ordered by Mental Health

**III. Relief:** State what relief you are seeking if you prevail on your complaint.

I am seeking three million dollars in compensatory and punitive damage relief.

I declare under penalty of perjury that on 2/27/2019 (date), I delivered this complaint to prison authorities at Nassau County Jail (name of prison) to be mailed to the United States District Court for the Eastern District of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/27/19

[signature]
Signature of Plaintiff

Nassau County Correction Center
Name of Prison Facility or Address if not incarcerated

Address

1900 0812
Prisoner ID#

rev. 12/1/2015